**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Copyright Rightsholder Identified in Exhibit 1, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:23-cv-04507 |
| v. | ) | |
| | ) | |
| The Partnerships and Unincorporated | ) | |
| Associations Identified on Schedule A, | ) | |
| | ) | |
| Defendants | ) | |

## <u>Complaint</u>

**NOW COMES** the Copyright Rightsholder Identified in Exhibit 1 ("Plaintiff"), by and through his

undesigned counsel and hereby brings its case against The Partnerships and Unincorporated

Associations identified on Schedule A attached hereto (collectively, "Defendants"), and alleges as

follows:

### Introduction

1.  This action has been filed by Plaintiff to combat online copyright infringers who offer for sale

    unauthorized and unlicensed products, including fire extinguishers, using complete, modified,

    and/or derivative versions of Plaintiff copyrighted work.

2.  Defendants have traded and continue to trade upon Plaintiff's commercial reputation and

    goodwill by offering for sale and/or selling unlicensed products pirated copies of Plaintiff's

    registered copyright ("Infringing Products") to consumers within the United States, including

    the State of Illinois and this Judicial District.

3.  Defendants create fully interactive, commercial Internet stores operating under at least the

    online marketplace accounts identified in **Schedule A,** attached hereto (collectively, the

    "Defendant Online Stores") and are intentionally designed to appear to be selling genuine

    Plaintiff products, while actually selling the Infringing Products to unknowing consumers.

4. The Defendant Online Stores share identifiers, such as using identical or slightly-edited (e.g., carefully "Photoshop-ed") product photographs, and design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

5. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' unauthorized use of Plaintiff's copyrighted work (the "Plaintiff Work"), as well as to protect unknowing consumers from purchasing unauthorized products over the Internet.

6. Plaintiff has been and continues to be irreparably damaged through consumer confusion and the piracy of the Plaintiff Work as a result of Defendants' actions and accordingly seeks injunctive and monetary relief.

**Jurisdiction and Venue**

7. This Court has original subject matter jurisdiction over the claims in this action pursuant to 17 U.S.C. § 501, *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)-(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each Defendant directly targets its business activities toward consumers in the United States, including Illinois and this Judicial District. Defendants reach out to do business with residents of Illinois and this Judicial District by operating one or more commercial, fully-interactive Defendant Online Stores through which residents of Illinois and this Judicial District can purchase and/or have purchased products being offered and sold using unauthorized reproductions of the Plaintiff Work. Each Defendant has targeted sales from residents of Illinois and this Judicial District by operating a Defendant

Online store that accepts payment in U.S. dollars and offers shipping to addresses within Illinois and this Judicial District for products offered using and with pirated copies of Plaintiff's copyrighted work. Each Defendant has committed and is committing tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## Parties

9. Plaintiff specializes in the creation, manufacture, marketing, and sale of fire extinguisher products (collectively, the "Plaintiff Products").

10. In the interest of promoting the Plaintiff Products, Plaintiff created and produced an instructional video demonstrating the product and its features (the "Plaintiff Work"). A true and correct copy of the federal copyright registration preview certificate for the Plaintiff Work, and relevant screenshots of the Plaintiff Work, is attached hereto as **Exhibit 1**.

11. Plaintiff's federal registration for the Plaintiff Work is valid, subsisting, and in full force and effect.

12. Plaintiff owns all rights, including without limitation, the rights to reproduce the Plaintiff Work in copies, to prepare derivative works based upon the Plaintiff Work, to distribute copies of the Plaintiff Work to the public by sale or other transfer of ownership, or by rental, lease, or lending, and to display the Plaintiff Work publicly.

13. Plaintiff has continuously used the Plaintiff Work in connection with the sale, distribution, promotion, and advertising of genuine Plaintiff Products since 2021, and consumers associate the Plaintiff Work with Plaintiff and his authorized Plaintiff Products.

14. Genuine Plaintiff Products have become very popular, driven by Plaintiff's elevated quality standards and innovative designs.

15. Genuine Plaintiff Products have been distributed, promoted and sold through distributors throughout the world, including the United States and on AliBaba.com. Plaintiff's sales of authorized Plaintiff Products have been substantial.

16. As a result of Plaintiff's long-standing use of the Plaintiff Work in association with Plaintiff's high-quality products, extensive sales, and significant marketing activities, the Plaintiff Work has achieved widespread acceptance and recognition among the consuming public and throughout U.S. interstate commerce.

17. Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of the Plaintiff Products. The success of Plaintiff's business enterprise is dependent and a result of its effort to marketing and advertising online via e-commerce.

18. The success of Plaintiff's Products additionally stems from sales to consumers and interest that its consumers have generated.

19. As a result of the efforts of Plaintiff, the quality of Plaintiff's Products, the promotional efforts for its products and designs, the members of the public have become familiar with Plaintiff's Products and the Plaintiff Work, and associate them exclusively with Plaintiff.

20. Plaintiff has made efforts to protect its interests in and to the Plaintiff Work. Plaintiff's is the only businesses authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Plaintiff Work. Plaintiff has not licensed or authorized Defendants to exploit the Plaintiff Work in any way.

21. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive Defendant Online Stores which operate on commercial online marketplaces. Each Defendant targets the United States, including Illinois

and this Judicial District, and has offered to sell and, on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including the State of Illinois and this Judicial District.

22. On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using unauthorized copies of the Plaintiff Work in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their infringing operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

### Defendant's Unlawful Conduct

23. Marketplaces like eBay and Amazon, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

24. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[1] with Department of Homeland Security seizures of infringing goods increasing more than 10-fold between 2000 and 2018[2] and a street value of seized goods increasing 246% from 2017 to 2022.[3]

---

[1] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.
[2] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States,* January 24, 2020.
[3] U.S. Customs and Border Protection Office of Trade, FY 2022 Fact Sheet Intellectual Property Rights, available at https://www.cbp.gov/sites/default/files/assets/documents/2023-Mar/IPR%20Fact%20Sheet%20FY2022%20Final%20Draft%20%28508%29%20%28004%29%20%282%29.pdf

25. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong.[4]

26. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[5]

27. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

28. Third party service providers like those used by Defendants do not robustly subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[6]

29. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[7]

---

[4] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.
[5] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019).
[6] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).
[7] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.

30. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[8]

31. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[9]

32. The success of Plaintiff's sales of the Plaintiff Product has resulted in substantial infringing activity and other attempts to misappropriate Plaintiff's proprietary rights. Plaintiff has policed the use of its Plaintiff Work and has identified many online product listings on marketplaces such as eBay and Amazon, and other Internet locations offering for sale and, on information and belief, selling products to consumers with unauthorized and often deceptively edited versions of the Plaintiff Work throughout the United States including this Judicial District.

33. Defendants enable and facilitate sales of their infringing products with unauthorized and often deceptively edited versions of the Plaintiff Work by presenting the Defendant Online Stores as legitimate resellers using standardized product listing layouts and terminology. On information and belief, Plaintiff has not licensed or authorized Defendants to use its Plaintiff Work in any way, and none of the Defendants are authorized retailers of genuine Plaintiff Products.

34. Defendants uniformly use the same method to deceive unknowing consumers, namely, by taking and identical, and nearly identically-edited, screen captures of the Plaintiff Work and including it in their product listing. The Amazon Defendants, taking advantage of the ability to embed videos in product listings, have included large segments of the Plaintiff Work, in addition to edited screenshots.

---

[8] Id., at p. 39.
[9] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. at 186-187.

35. Defendants take pains to conceal their identities from the public, almost invariably using meaningless store names and addresses which do not identify Defendants. Defendants may operate several stores simultaneously, using fictitious identities such as those listed in Schedule A, as well as other fictitious names and addresses. Moreover, infringers like Defendants will often register new store accounts under new fictitious names when they receive notice that one or more stores have been the subject of a lawsuit. The use of these store registration schemes is one of several ways in which Defendants, to avoid being shut down, conceal their true identities and the inner workings of their infringement operations.

36. Despite Defendants operating under multiple fictitious names, their stores bear numerous similarities. Products offered using pirated copies of Plaintiff's registered Plaintiff Work bear similar irregularities and indicia of being counterfeit to one another, which suggests that the products were manufactured and/or supplied by a common source and that the Defendants selling them are interrelated. Moreover, the Defendant Online Stores use other common means to sell the Infringing Products including, without limitation, using the same payment processors, obfuscated contact information, identically or similarly priced items, similar product listing content styles and text, and the same image(s) taken from the Plaintiff Work.

37. Infringers like Defendants will typically ship infringing products in small quantities via international mail to mitigate detection by U.S. Customs and Border Protection. Further, they will typically operate multiple credit card merchant accounts or use layers of payment gateways to forestall their cashflow being interrupted due to trademark enforcement efforts. On information and belief, Defendants utilize offshore bank accounts and routinely move funds from U.S.-based merchant accounts (*e.g.*, within China) outside the jurisdiction of this Court.

38. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Plaintiff Work in connection with the advertisement, distribution,

offering for sale, and sale of Infringing Products into the United States and into Illinois over the Internet.

39. Each Defendant offers shipping to the United States, including, specifically Illinois. On information and belief, each Defendant has offered to sell or sold Infringing Products into the United States and the state of Illinois.

40. Defendants' unauthorized use of the Plaintiff Work in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including with respect to the sale of such products into the United States, including specifically Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

### Count I - Copyright Infringement (17 U.S.C. § 501)

41. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 40.

42. Plaintiff is the owner of the original Plaintiff Work registered and contained in **Exhibit 1**.

43. The Plaintiff Work has significant value and has been produced and created at considerable expense.

44. Among the rights granted to Plaintiff is the exclusive right to market and sublicense the right to copy, reproduce, and display the Plaintiff Work and make derivative works thereof.

45. Upon information and belief, Defendants had access to the work in **Exhibit 1** through viewing Plaintiff's sale of its genuine Plaintiff Products which were advertised and sold in association with the Plaintiff Work. After accessing the Plaintiff Work, Defendants wrongfully created copies of the copyrighted Plaintiff Work without Plaintiff's consent and engaged in acts of widespread infringement through the creation and reproduction of images and videos containing

the Plaintiff Work, posting the images and videos via online websites and digital markets, and the sale of fire extinguisher items product listings using the Plaintiff Work without authorization.

46. Each Defendant, without the permission or consent of the Plaintiff, has offered to sell, marketed, distributed, advertised, sold and continues to sell online products in connection with the Plaintiff Work and reproduce, display, and distribute the Plaintiff Work without authorization and in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106.

47. As a direct result of their acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted Plaintiff Work.

48. Defendants knew their acts constituted copyright infringement and Defendants' conduct was willful within the meaning of the Copyright Act.

49. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501.

50. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill.

51. Plaintiff is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of its wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Using the Plaintiff Work or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising,

offering for sale, or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff Work;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under using Plaintiff Work;

c. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Plaintiff Work and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's copyrights, including the Plaintiff Work, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay and Walmart, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Plaintiff Work;

**b.** disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiff Work; and

**c.** take all steps necessary to prevent links to the Defendant Online Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index;

**3)** For Judgment in favor of Plaintiff against Defendants that they have: (i) willfully infringed Plaintiff's rights in his federally registered copyright pursuant to 17 U.S.C. § 501; and (ii) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

**4)** For Judgment in favor of Plaintiff against Defendants for actual damages or other available damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial;

**5)** That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

**6)** That Plaintiff be awarded its reasonable attorneys' fees and costs under 17 U.S.C. § 505 as may be allowable;

**7)** Award any and all other relief that this Court deems just and proper.

Dated: July 12, 2023

Respectfully submitted,

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312
adamu@au-llc.com
*Counsel for Plaintiff*