**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **XIAOQIAN ZHAO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 4507** |
| | ) | |
| **BABIQIU, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

XiaoQian Zhao sued BABIQIU, CCelegant, EasyFunny, NewO2, shanglan, and SW-WORLDER (and others not at issue here) for copyright infringement. The defendants counterclaimed, alleging abuse of process, tortious interference with contractual relations, and tortious interference with prospective economic advantage. Zhao has filed a motion for summary judgment on both her own claim and the defendants' counterclaims. For the reasons below, the Court grants Zhao's motion in part and denies it in part.

### Background

The following facts are undisputed unless otherwise noted. XiaoQian Zhao is the creator of a fifty-nine second video for a SHAR POTS fire extinguisher demonstrating its proper use and safety. The video portrays a person spraying themselves with a fire extinguisher labeled "SHAR POTS" while Chinese subtitles across the bottom explain the fire extinguisher's safety features. Zhao has used this video to help promote the SHAR POTS brand since March 17, 2021, and she acquired a U.S. copyright

registration for the video on May 26, 2023.

The defendants operate online Amazon storefronts that sell fire extinguishers. Defendants BABIQIU, EasyFunny, NewO2, shanglan, and SW-WORLDER included a thirty-eight second clip from Zhao's fifty-nine second video in the photo section of their product listings. The only change they made to Zhao's video (other than shortening its length) was translating the subtitles from Chinese to English. Defendant CCelegant included a snapshot of the video in its listing's product description. The defendants did not receive authorization from Zhao to use the clips or the snapshot. Instead, they downloaded Zhao's video from the website 1688.com, a public platform where sellers and distributors commonly share promotional materials for products. The defendants allege, and Zhao disputes, that Zhao's video was widely used on 1688.com.

Zhao filed suit against the defendants asserting a claim for copyright infringement on July 12, 2023. Zhao moved for a temporary restraining order on July 16. The Court issued a TRO on July 21, finding that Zhao would likely suffer irreparable harm if the defendants were allowed to modify their registration data to create new online accounts and move assets offshore beyond U.S. jurisdiction. In accordance with the TRO, the defendants' financial accounts were frozen. The Court converted the TRO to a preliminary injunction on August 17.

On September 26, 2023, the defendants filed their answer and asserted three state-law counterclaims: abuse of process, tortious interference with contractual relations, and tortious interference with prospective economic advantage. Discovery is now complete, and Zhao has moved for summary judgment.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.  *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).  The Court cannot "make credibility determinations" or "weigh the evidence."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Still, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial" that go beyond a "mere scintilla of evidence" to overcome summary judgment.  *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018).

## A.      Copyright infringement

Zhao asserts a claim for copyright infringement against the defendants for the unauthorized use of her video in their product listings.  The federal Copyright Act grants a copyright owner the exclusive right to reproduce and prepare derivatives of their copyrighted work.  17 U.S.C. § 106.  To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  It is undisputed that Zhao has copyright ownership over her video, and her registration of the video within five years of its first publication is prima facie evidence of

3

the copyright's validity.  *See* 17 U.S.C. § 410(c).

The defendants argue that even if the copyright is valid, no copying occurred. Copying can be proven with direct evidence, such as a direct admission of copying, or through circumstantial evidence.  *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012).  A plaintiff proves copying circumstantially when it shows that a defendant "had the opportunity to copy" the plaintiff's work and that the two works are "substantially similar." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017).  To determine similarity, the Seventh Circuit employs the "ordinary observer" test:  whether an "accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression."  *Id.* at 1101.

Zhao has sufficiently provided both direct and circumstantial evidence of copying.  The defendants directly admitted that they acquired Zhao's video from a website.  By admitting they took Zhao's video, the defendants also concede they had the opportunity to copy Zhao's video.  Finally, Zhao's video and the video defendants used are substantially similar:  the only changes made to the video were shortening its length and changing the subtitles from Chinese to English.  Although the defendants argue that changing the subtitles differentiates their videos and snapshot, no ordinary reasonable person would find their works meaningfully distinct from Zhao's original.  In fact, a translation of this sort is a paradigmatic example of a derivative work protected by copyright.  *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works, such as a translation . . . ."); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014) ("Paradigmatic examples of derivative works include the

4

translation of a novel into another language . . . .").

## B.     Affirmative defenses

The defendants, perhaps recognizing that arguing against copying was an uphill battle, asserted twenty-five affirmative defenses in their answer.  They raised four of these defenses in their briefing in opposition to summary judgment:  fair use, laches, equitable estoppel, and waiver.  Because the burden of proof is on the defendants when affirmative defenses are at issue, the Court addresses only these four defenses; the others have been forfeited.  *See Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) (requiring defendants to present "evidence sufficient to withstand summary judgment" when asserting an affirmative defense).

### 1.     Fair use

The defendants first assert that their use of Zhao's video was fair use.  The Copyright Act includes four factors to consider when evaluating alleged fair use: "(1) the purpose and character of the use, including whether such use is of commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107; *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758–59 (7th Cir. 2014).  Although these factors guide judges, they are "not exhaustive and do not constitute an algorithm that enables decisions to be ground out mechanically." *Substance, Inc.*, 354 F.3d at 629.  Rather, a court must keep in mind fair use's overarching goal of allowing a copier "to pursue an aim that the law recognizes as proper" while ensuring "no more than is reasonably necessary is copied."  *Id.*

5

### a. Purpose and character of use

The first factor concerns whether the "new work merely supersede[s]" the original "or instead adds something new . . . altering the [original] with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Commercial use weighs against a finding of different purpose or character, as it indicates a similar purpose: profit. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531 (2023); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). But the "commercial nature of the use is not dispositive." *Goldsmith*, 598 U.S. at 531. A defendant's commercial use can avoid "impermissibly creat[ing] a 'substitute' that 'supersedes' the original" if their use "permissibly 'transforms'" the original into something distinct. *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 C 4664, 2014 WL 3368893, at *9 (N.D. Ill. July 8, 2014) (quoting *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 518 (7th Cir. 2002)).

The defendants' use of Zhao's video was commercial, weighing against a finding of distinct purpose or character. The only reasonable purpose the defendants had for putting Zhao's video on their fire extinguishers' product listings was to encourage sales by highlighting their products' safety features.

Still, the defendants argue their commercial use was transformative because they changed the language of the subtitles. By adapting the video for an English-speaking audience, the defendants contend, they provided educational and functional information about their products. Yet expanding the reach of Zhao's video through translation does not transform the video's commercial purpose or character. Whether subtitled in Chinese or English, the purpose of the video is the same: to sell fire

extinguishers. *Cf. Authors Guild*, 755 F.3d at 101 ("[T]he non-English-speaking audience cannot gain access to untranslated books written in English and an unauthorized translation is not transformative simply because it enables a new audience to read a work."). Factor one weighs against a finding of fair use.

### b. Nature of the copyrighted work

The second factor involves the creative nature of the copyrighted work. Works that are more creative are "closer to the core of intended copyright protection" than works that are more functional or factual, justifying greater protection against fair use. *Acuff-Rose*, 510 U.S. at 586. Some photographs, being both "factual and creative," may fall into a "grey area." *See FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 906, 912–13 (N.D. Ill. 2018). Yet even the most "mundane" of snapshots can encompass creative choices, including "decisions about lighting, camera angle and distance, shadowing, and post-production editing." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 45 F. Supp. 3d 1058, 1102 (N.D. Ill. 2020) (collecting cases from several circuits finding informative photographs still possess a creative nature).

The defendants argue the factual, instructional nature of Zhao's video justifies less protection from fair use. Although the video is instructional, it also contains many creative choices, such as an outdoor background, sunny lighting, a camera angle focused on the torso of an actor, and a fire extinguisher positioned with its unique branding facing the camera. These decisions were not obvious nor limited by factual circumstances; Zhao could have picked any number of backgrounds and camera angles that would have effectively captured the safety of her specific fire extinguisher. Factor two weighs against a finding of fair use.

7

### c. Amount and substantiality of the portion used

The third factor involves whether the amount and substantiality of the portion used was "reasonable in relation to the purpose of the copying." *Acuff-Rose*, 510 U.S. at 586. This factor is closely related to the first factor, as "the extent of permissible copying varies with the purpose and character of the use." *Id.* at 586–87. Because certain commentaries like parodies require using a substantial amount of the original work to make their point, there is "no per se rule against copying in the name of fair use an entire copyrighted work if necessary." *Substance, Inc.*, 354 F.3d at 629. But because fair use is limited to what is necessary, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *FameFlynet*, 344 F. Supp. 3d at 913 (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998)).

The defendants argue they only used necessary portions of Zhao's video to maintain its instructional content. Yet in failing to make any edits other than changing the length of the video and its subtitles, the defendants coopted several of Zhao's creative choices, including the camera angle and lighting. *See Maui Jim*, 45 F. Supp. 3d at 1102. The defendants did not need to take those creative aspects of Zhao's video. They could have communicated the safety of their fire extinguishers in several alternative ways, especially considering that Zhao's video does not even depict the brand of fire extinguisher the defendants are selling. *Cf. Galvin v. Ill. Republican Party*, 130 F. Supp. 3d 1187, 1195 (N.D. Ill. 2015) (finding that the defendants "did not need to use the copyrighted work" to convey a political message when there was a "plethora of alternative means" to do so). Factor three weighs against a finding of fair use.

### d. Effect of use on potential market or value

The fourth factor considers not just the effect of a defendant's use on the current market for the plaintiff's work, but also whether "unrestricted and widespread conduct" like the defendant's "would result in a substantially adverse impact on the potential market" for the work. *Acuff-Rose*, 510 U.S. at 590. Courts consider whether a defendant's use "serves as a substitute in both the market for the original work and the market for its legally protected derivatives." *Galvin*, 130 F. Supp. 3d at 1195 (citing *Acuff-Rose*, 510 U.S. at 587). The Seventh Circuit has described this factor as "usually" the most important. *Kienitz*, 766 F.3d at 758 (7th Cir. 2014).

Although the defendants concede their selling of fire extinguishers places them in a similar market as Zhao, they argue this factor should still favor fair use due to the lack of evidence that their use diverted any fire extinguisher sales. This argument misses the mark because it focuses only on the current market for fire extinguishers rather than the potential market for Zhao's copyrighted video. Widespread use like that made by the defendants would have a substantial adverse effect on the market for Zhao's video, as there would be no reason for fire extinguisher sellers to license Zhao's safety video if they could freely take portions of it by simply changing the subtitles. *See Maui Jim*, 45 F. Supp. 3d at 1103 (finding the widespread unauthorized use of photos "certainly affects [the] market for licensing"). Factor four weighs against a finding of fair use.

There is no genuine dispute of fact that the weight of these four factors falls against the application of fair use. In light of these factors and fair use's overarching goal of allowing proper uses when reasonably necessary, no reasonable jury could find the defendants' use of Zhao's video was fair use.

**2.     Laches, equitable estoppel, and waiver**

Second, the defendants assert that Zhao's alleged delay in enforcing her copyright bars her copyright infringement claim based on laches, equitable estoppel, and waiver. But laches "cannot be invoked to preclude adjudication of a claim for damages" brought within the "three-year limitations period" prescribed by the Copyright Act. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014); *see* 17 U.S.C. § 507(b). Because the defendants have not provided any evidence indicating they used Zhao's video more than three years prior to this suit, laches cannot be invoked.

For a court to invoke equitable estoppel in a copyright action, "the copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer to rely upon such action to [their] detriment." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir. 1991). Similarly, waiver of a copyright claim occurs when the plaintiff "intentional[ly] relinquish[es] or abandon[s]" their "known right." *Robertson Transformer Co. v. Gen. Elec. Co.*, 191 F. Supp. 3d 826, 832 (N.D. Ill. 2016) (quoting *United States v. Woods*, 301 F.3d 556, 560 (7th Cir. 2002)). Awareness or intent cannot be inferred solely from a plaintiff's inaction. *See id.* at 840 ("[P]ermission cannot be inferred from plaintiff's silence unless plaintiff was aware" of infringement); *Isringhausen Imps., Inc. v. Nissan N. Am., Inc.*, No. 10-CV-3253, 2011 WL 6029733, at *3 (C.D. Ill. Dec. 5, 2011) ("[F]ailure to act, without more, is insufficient evidence of a[n] . . . intent to waive [a] right to claim infringement.").

The defendants argue that because Zhao's video was widely used by other businesses on the website 1688.com, Zhao induced the defendants into reasonably believing the video was not copyrighted. Yet the defendants do not provide any evidence that Zhao was aware of her video's accessibility on 1688.com. Nor do they

provide any evidence that Zhao intended to relinquish or abandon her copyright infringement claims. Even if the defendants reasonably believed the video was not copyrighted based on Zhao's alleged inaction against 1688.com's businesses, inaction alone cannot support an inference of Zhao's awareness of the infringing conduct or her intent to waive her copyright claims. *See Robertson Transformer*, 191 F. Supp. 3d at 840; *Isringhausen Imps.,* 2011 WL 6029733, at *3. Without evidence of Zhao's awareness or intent, no reasonable jury could find Zhao's claims barred by equitable estoppel or waiver.

Absent valid affirmative defenses, Zhao has shown there is no genuine dispute of material fact regarding the defendants' infringement of her copyright. The Court therefore grants summary judgment in favor of Zhao as to liability on her copyright infringement claim.

## C. Counterclaims

The defendants assert three state-law counterclaims: abuse of process, tortious interference with contractual relations, and tortious interference with economic advantage.

### 1. Abuse of process

Under Illinois law, abuse of process requires showing two elements: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmerman's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015). These elements are "strictly construed," as "the tort of abuse of process is not favored under Illinois law." *Gao v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 21 C 4055, 2022 WL

1028926, at *6 (N.D. Ill. Apr. 4, 2022) (quoting *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183, 790 N.E.2d 925, 929–30 (2003)).

To show an improper use of legal process, the defendants must provide evidence "that the process was used to accomplish some result that is beyond the purview of the process." *Pace*, 795 F.3d at 758 (quoting *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165, 820 N.E.2d 1167, 1172–73 (2004)). In other words, the abuser "must have intended to use the action to accomplish some result that could not be accomplished through the suit itself." *Gao*, 2022 WL 1028926, at *6 (quoting *Reed v. Doctor's Assocs., Inc.*, 355 Ill. App. 3d 865, 876, 824 N.E.2d 1198, 1206 (2005)). The "usual case" of abuse of process is "some form of extortion," such as "using the process to put pressure on someone to compel him to pay a different debt or to take or refrain from taking some other action." *Id.* (quoting *Cmty. Nat'l Bank in Monmouth v. McCrery*, 156 Ill. App. 3d 580, 583, 509 N.E.2d 122, 124 (1987)). "When the process is used only for its intended purpose," however, "there can be no cause of action for abuse of process, even if the existence of an ulterior motive is shown." *Id.* (quoting *McCrery*, 156 Ill. App. 3d at 583, 509 N.E.2d at 124).

Whether or not the defendants can show an ulterior motive, their abuse of process claim fails as a matter of law, as there is no evidence of improper use of process. The defendants argue that Zhao's obtaining of a temporary restraining order went beyond addressing copyright infringement, as it involved freezing the defendants' financial accounts, which in turn disrupted the defendants' normal business operations. But TROs are regularly used "to prevent alleged infringers from disposing of the profits of alleged infringement activity." *Gao*, 2022 WL 1028926, at *7. Zhao's TRO froze the

12

defendants' accounts to prevent them from disposing of profits into unreachable offshore accounts, meaning the freeze was "not extraneous to the purpose of the proceeding and the proper subject of a TRO." *Id.* Because the defendants provide no evidence of a further action Zhao took outside of the normal TRO process, no reasonable jury could find in favor of their abuse of process counterclaim. The Court therefore grants summary judgment in Zhao's favor on the abuse of process counterclaim.

### 2. Tortious interference

To support a claim for tortious interference with contractual relations, a plaintiff must show: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) (quoting *Complete Conf. Coordinators, Inc. v. Kumon N. Am., Inc.*, 394 Ill. App. 3d 105, 109, 915 N.E.2d 88, 93 (2009)). Although this counterclaim rests on the assumption that Zhao induced Amazon to breach a contract with the defendants, the defendants have not produced or identified any contractual term or policy that Amazon breached. Without such evidence, no reasonable jury could find that Zhao tortiously interfered with the defendants' contract(s) with Amazon. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (affirming summary judgment against a tortious interference with contractual relations claim when claimants failed to "allege[] or present[] any evidence that customers breached already existing agreements"); *cf. MercAsia USA Ltd. v.*

13

*3BTech, Inc.*, No. 3:17-CV-718, 2020 WL 3549894, at *4 (N.D. Ind. June 30, 2020) (denying injunctive relief on a tortious interference with contractual relations claim when the plaintiff "fail[ed] to cite any specific contractual term or policy that Amazon violated").

In contrast, tortious interference with prospective economic advantage does not require a contractual breach. A plaintiff must instead establish: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 508 (7th Cir. 2007) (quoting *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300–01, 751 N.E.2d 1126, 1133 (2001)).

Illinois law "recognize[s] a privilege in [certain tort] cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's . . . rights." *KMK Grp. v. Helco Corp.*, No. 18 C 6361, 2021 WL 4499496, at *1 (N.D. Ill. Aug. 18, 2021) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 157, 545 N.E.2d 672, 677 (1989)). "If the defendant's interference is privileged, the plaintiff bears the burden of proving that the defendant's conduct was malicious." *Id.* (quoting *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993)). A plaintiff shows malice when it provides evidence that the opposing party acted "intentionally and without justification." *Id.* (quoting *Delloma*, 996 F.2d at 171). This privilege applies to claims of tortious interference with contractual relations and tortious interference with economic advantage. *See Mt. Vernon Hosp.*, 131 Ill. 2d at 157, 545 N.E.2d at 677; *Dawson v. Gen. Motors Corp.*,

977 F.2d 369, 375 (7th Cir. 1992) ("Interference designed to protect one's financial interest is generally privileged . . . .").

The defendants argue that Zhao tortiously interfered with their business relationship with Amazon by submitting infringement notices, leading to the removal of their products from Amazon's website.  But the defendants provide no evidence that Zhao acted with the malicious intent required to overcome her privilege to protect her copyright interest.  Although the defendants make a conclusory argument that Zhao made knowingly false infringement claims, they fail to support their accusation.  Nor could they in light of the Court's conclusion that Zhao's copyright infringement claim is meritorious.  *See Milo Enters., Inc. v. Bird-X, Inc.*, No. 18 C 6315, 2022 WL 874625, at *8 (N.D. Ill. Mar. 24, 2022) ("[A] party's statement to a third party cannot be the basis for a tortious interference claim if they made that statement in a good faith effort to protect another legal interest . . . .").  Because no reasonable jury could find Zhao acted maliciously, the Court grants summary judgment in favor of Zhao on the defendants' tortious interference claims.

### D.    Damages

#### 1.    Defendants' profits

Zhao first requests damages in the form of the defendants' profits.  The Copyright Act allows a plaintiff to recover "any profits of the infringer that are attributable to the infringement."  17 U.S.C. § 504(b).  To establish the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue"; the burden then shifts to the infringer to provide evidence that its profits were "attributable to factors other than the copyrighted work."  *Id.*  A plaintiff has not fulfilled its initial burden of

showing profits "attributable" to the infringement, however, until it shows "a causal nexus between the infringement and the gross revenues." *Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016).

Zhao does not seek profits from any direct sales of her copyrighted video. Rather, she argues that because the defendants used her video in their product listings, the profits from the defendants' fire extinguisher sales are indirectly attributable to the use of her video. Proving that indirect profits from noninfringing goods are attributable to copyright infringement is difficult. The Seventh Circuit has expressed skepticism regarding whether a plaintiff can ever show a causal nexus between copyright infringement and the sale of noninfringing goods. *See Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, 532 F.3d 620, 623 (7th Cir. 2008) ("It is doubtful that profits from the sale of noninfringing goods or services . . . can be attributed to a copyright infringement with enough confidence to support a judgment.").

Despite this difficult task, Zhao does not provide any evidence to support her causal nexus claim. Instead, she contends that a causal nexus can be inferred by the defendants' use, as the "[t]he only purpose [the] [d]efendants possibl[y] had for including the [video] on their product listings was to increase sales." Pl.'s Mot. for Summ. J., at 19. But a purpose to increase sales is not enough. A causal nexus showing requires evidence that sales *actually* increased. *See Bell*, 827 F.3d at 711 (rejecting a causal nexus argument when "[t]here [was] no evidence suggesting that [the defendant] attracted more clients because of [the plaintiff's] photo"). Without more evidence, Zhao cannot bridge the gap between the defendants' infringement and sales of noninfringing goods.

Zhao attempts to fill this gap not with evidence, but a slew of out-of-circuit cases that found an adequate causal nexus for indirect profits. Each of them is distinguishable.

In *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the defendant continued using the plaintiff's photographs in a promotional booklet after their licensing agreement expired. *Id.* at 704. Customers who bought through the promotion were able to purchase the defendant's products at a lower price. *Id.* at 712. The Ninth Circuit held that the plaintiff had "demonstrated a sufficient causal nexus through evidence" that the defendant's promotion "featur[ed] the infringing material, that customers who ordered [the defendant's products] through the . . . promotion would have seen the advertisement, and that [the defendant] profited from the promotion." *Id.* at 712; *see also Stockroom Inc. v. XR LLC*, No. SACV 08-01046, 2009 WL 10674303, at *3 (C.D. Cal. Oct. 19, 2009).

Zhao has not provided evidence that customers saw her video. And to say her video "advertised" the defendants' products is a stretch. Although present on the product listings, a customer would have to click through the listings' photo section or scroll to the bottom of the listings' product description to see Zhao's video. This is different from *Polar Bear*, where customers had to flip through the promotional booklet containing infringing pictures to see the products that were on sale. Without evidence showing otherwise, a reasonable jury could find that the defendants' customers never saw the video, let alone were influenced by it. Thus Zhao is not entitled to summary judgment on this point.

Zhao's reliance on *Garcia v. Coleman*, No. C-07-2279, 2009 WL 799393 (N.D.

17

Cal. Mar. 14, 2009), falters for the same reason. In *Garcia*, the infringing picture in question was displayed "prominently on the label" of the product, "Sonoma Ridge" wine bottles. *Id.* at *4. This led the district court to conclude that there was "no doubt that consumers who bought the wine would have seen the copyrighted photograph." *Id.* Further, the court found that because the photograph was of a mountain ridge in Sonoma, it was "inextricably linked to the brand of wine being sold," as it "graphically embodied the brand on the label." *Id.*

In this case, Zhao's video is not physically displayed on the defendants' fire extinguishers. Nor is it "prominently" displayed on the defendants' listings, or inextricably linked to the defendants' fire extinguishers. If anything, the fact that the defendants failed to significantly alter Zhao's video distances it from their products, as the fire extinguisher in the video is visibly not the same brand they are selling.

Finally, *Alvantor Industry Co. v. Gong Si*, No. 2:21-CV-01820, 2022 WL 1405656 (C.D. Cal. May 2, 2022), is inapposite. In *Alvantor*, the district court found a causal nexus between the defendant's use of the plaintiff's copyrighted gazebo descriptions and the plaintiff's portable gazebo profits because "both [the plaintiff] and [the] [d]efendant sold their products on Amazon—at similar prices and to the same customers—and Amazon routinely displayed [d]efendant's product alongside [the plaintiff]'s product[s]." *Id.* at *8. Zhao, on the other hand, has not provided any evidence that the brand of fire extinguisher her video promotes is being sold on Amazon alongside the defendants' products or that the products are similarly priced.

For an on-point out-of-circuit case, *see Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002). In *Mackie*, the defendants used a photograph of a copyrighted sculpture in their

18

twenty-four-page promotional brochure for a symphony campaign. *Id.* at 912. The plaintiff then sued the defendants for copyright infringement and requested as damages ticket profits obtained through the promotion. *Id.* at 912–13. In support of this request, the plaintiff offered an expert who concluded that because the promotional brochure generated 1.5% of the ticket revenue, 1.5% of the revenue was attributable to the photograph of plaintiff's sculpture. *Id.* at 913. The Ninth Circuit held the plaintiff's claim for damages was too speculative to survive summary judgment. *Id.* at 916. The court reasoned that it could come up with "virtually endless permutations" for why a customer would buy a ticket to the symphony absent "concrete evidence" of the copyrighted work's influence. *Id.* Further, the expert's testimony was not persuasive, because although his calculation could "determine how many people subscribed because of the brochure," it could not "determine how many of those individuals subscribed *because of [the plaintiff]'s work*." *Id.*

Zhao would have the Court come to the same speculative conclusion as the expert in *Mackie*—because the listings containing her video generated revenue, the revenue must be attributable to her video. Yet, like the Ninth Circuit, the Court can come up with numerous permutations for why a customer may have bought the defendants' fire extinguishers: its price, its name, its placement on Amazon's website, etc. Because a reasonable jury could find the defendants' customers bought their fire extinguishers for any number of reasons, Zhao is not entitled to summary judgment on her claim for recovery of the defendants' profits.

### 2. Statutory damages

In the alternative, Zhao requests statutory damages. The Copyright Act allows

for statutory damages "instead of actual damages and profits" of "a sum not less than $750 or more than $30,000, as the court considers just." 17 U.S.C. § 504(c)(1). Courts have "wide discretion" in awarding statutory damages and are "not required to follow any rigid formula." *Chi-Boy Music*, 930 F.3d at 1229. The Seventh Circuit has suggested that a court, in exercising its discretion, may consider "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* (citation omitted). A court may also look at the "size and scope of a defendant's operations to determine a baseline for damages." *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 14 C 9061, 2015 WL 3818622, at *2 (N.D. Ill. June 18, 2015). In the trademark context, some courts have found that the ability of online sellers to reach a "vast customer base" justified a substantial statutory damages award. *See Ent. One UK Ltd. v. 2012Shilang*, 384 F. Supp. 3d 941, 953 (N.D. Ill. 2019); *Luxottica*, 2015 WL 3818622, at *2.

The Court finds, based on the *Chi-Boy Music* factors and the size and scope of the defendants' operations, that a significant statutory damages award is warranted. First, the Court is justified in awarding statutory damages, as it is difficult for Zhao to obtain actual or profits-based damages due to the causation issues just discussed. *See Chi-Boy Music*, 93 F.2d at 1229 ("It is precisely because of the difficulty in measuring such losses . . . that statutory damages exist."). Second, the defendants' infringement was blatant. The only changes made to Zhao's video were to cut part of it and change the language of the subtitles. Third, a significant award is necessary to deter future copyright infringement of Zhao's video. Even if the defendants did not have actual

20

knowledge that the video was copyrighted, a significant award incentivizes the defendants and other businesses to diligently check for copyright status before using someone else's work. It also incentivizes businesses to create their own works before resorting to taking someone else's, reducing the possibility of inadvertent infringement.

Finally, the size and scope of the defendants' operations justifies a large statutory damages award. The defendants, as online sellers, were able to reach a vast customer base. Although the defendants dispute that Zhao's video contributed to their fire extinguisher sales, it is undisputed that the defendants sold a total of 101,541 units, for total revenues of $4,265,546.87, while portions of Zhao's video were on their listings.

In light of the *Chi-Boy Music* factors and large-scale nature of the defendants' operations, the Court awards Zhao $30,000—the top of the statutory range—against each defendant.

### 3. Willful damages

Zhao also asks for enhanced statutory damages based on the defendants' willful infringement. A court may, "in its discretion," "increase the award for statutory damages to a sum of not more than $150,000" if the copyright owner proves the "infringement was committed willfully." 17 U.S.C. § 504(c)(2). "[A] finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (citation omitted). The "most persuasive" evidence of willfulness is notice to the infringer before the infringement occurred. *Id.* at 511 (citation omitted). But willfulness can also be established through evidence that the infringer was willfully blind. *In re Aimster Copyright Litig.*, 334 F.3d

643, 650 (7th Cir. 2003). A defendant is willfully blind if it "(1) 'subjectively believe[s] that there is a high probability that [the] fact exists' and (2) 'take[s] deliberate actions to avoid learning of that fact.'" *MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic, LLC*, 730 F. Supp. 3d 740, 751–52 (N.D. Ill. 2024) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

Zhao argues all the defendants were willful infringers based on their failure to diligently determine whether Zhao's video was copyrighted. She highlights defendant SW-WORLDER as failing to perform any due diligence. SW-WORLDER's only explanation is that it "discovered that many companies" were using the video before it did and that none of those companies' uses "contain[ed] any copyright warnings." Def. SW-WORLDER Decl., Ex. 11, ¶ 6. This is not good enough; it is basically an "everybody does it" defense. SW-WORLDER, seeing that the video promoted another product with a unique trademark, should have been on notice that the video might be protected by intellectual property rights. *See Bartels v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 23 C 3755, 2024 WL 1363579, at *4 (N.D. Ill. Mar. 29, 2024) (finding the defendant willfully infringed when "it did not engage in a reasonable [intellectual property rights] search," as the "'recurrence' of [the plaintiff's] name next to his artwork should have put [the defendant] on notice the artwork was copyrighted"). No reasonable jury could find that SW-WORLDER was not at least acting in reckless disregard of Zhao's copyright rights by failing to engage in any intellectual property rights search.

The other defendants, however, contend they made a reasonable intellectual property rights search before taking Zhao's video. Defendant shanglan states it

22

"checked the copyrights of these images through channels" such as "professional image libraries and search engines."  Def. shanglan Decl., Ex. 10, ¶ 5.  Defendants BABIQIU, CCelegant, EasyFunny, and NewO2 state they, in addition to checking professional image libraries and search engines, also "view[ed] the metadata and copyright marks" of the video and "read[] the copyright statements and license proof of the website" where they obtained the video.  Def. BABIQIU Decl., Ex. 12, ¶ 5; Def. CCelegant Decl., Ex. 7, ¶ 5; Def. EasyFunny Decl., Ex. 8, ¶ 5; Def. NewO2 Decl., Ex. 9, ¶ 5.  Although Zhao is correct that the defendants produced no documents proving they took these described measures, the Court cannot "weigh the evidence" or "make credibility determinations" when evaluating a summary judgment motion.  *See Payne*, 337 F.3d at 770.  Based on their declarations, a reasonable jury could find defendants BABIQIU, CCelegant, EasyFunny, and NewO2 did not willfully infringe.  For these reasons, the Court grants Zhao's motion for summary judgment regarding defendant SW-WORLDER but denies the motion regarding defendants BABIQIU, CCelegant, EasyFunny, NewO2, and shanglan.

But although the Court may enhance the damages award against SW-WORLDER based on its willfulness, whether to do so is still within the Court's discretion.  *See* 17 U.S.C. § 504(c)(2); *Chi-Boy Music*, 930 F.2d, at 1229–30.  The Court concludes that the $30,000 damages already awarded to Zhao against SW-WORLDER is sufficient to fulfill all of the purposes of statutory damages in this particular case and that a higher award is not called for.

### 4.    Attorneys' fees

The Copyright Act allows the prevailing party to be awarded attorneys' fees.

17 U.S.C. § 505. Yet attorneys' fees may not be awarded as a "matter of course." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (citation omitted). Because there is no "precise rule or formula" for determining whether to award fees, the Court must make a "particularized, case-by-case assessment." *Id.* (citation omitted). The Supreme Court has identified several factors courts should consider: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation." *Id.* (citation omitted).

Zhao fails to analyze any of these factors in her motion. Instead, she argues that there is a strong presumption in the Seventh Circuit of awarding attorneys' fees to the prevailing party in copyright infringement cases. But this presumption applies only to prevailing defendants, as defendants will "abandon meritorious defenses" if the cost of pursing those defenses exceeds the benefit of continuing their actions. *See Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 632 (7th Cir. 2023). Zhao has forfeited a claim for attorneys' fees by failing to set out a reasoned argument for them. The Court therefore denies her request for attorneys' fees.

## E.     Permanent injunction

Zhao's request for a permanent injunction against the defendants' unauthorized use of her video is not substantively disputed by the defendants. The Court grants her motion for permanent injunctive relief.

## Conclusion

For the reasons stated above, Zhao's motion for summary judgment is granted in part and denied in part, as follows. Zhao is entitled to summary judgment in her favor: (1) as to liability on her copyright infringement claim; (2) against the defendants'

counterclaims; (3) on her request for non-enhanced statutory damages against all defendants; and (4) on her request for enhanced statutory damages against defendant SW-WORLDER. The Court denies Zhao's motion for summary judgment regarding: (1) her request for the defendants' profits; and (2) her willful statutory damages enhancement against defendants BABIQIU, CCelegant, EasyFunny, NewO2, and shanglan. The Court has further concluded that Zhao is entitled to $30,000 in statutory damages from each defendant, for a total of $180,000. The Court will also enter a permanent injunction barring the defendants from violating Zhao's rights in her copyrighted video. The Court denies Zhao's request for attorneys' fees. Zhao will have to decide at this point whether to proceed on the matters on which the Court has not granted summary judgment in her favor, specifically, the question of an award of the defendants' profits and determination of willful infringement regarding the defendants other than SW-WORLDER. Zhao is directed to file a status report addressing these points by January 21, 2025. The case is set for a telephonic status hearing on January 27, 2025 at 9:30 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date: January 6, 2025

_____
MATTHEW F. KENNELLY
United States District Judge